### In re CLEVELAND DISCOUNT CO.

(District Court, N. D. Ohio, E. D. November 30, 1923.)

**1. Bankruptcy ⊂⇒84—Petition held amendable to amplify allegation of act of bankruptcy.**

Where an involuntary petition against a corporation charged as the act of bankruptcy that a receiver was appointed by a state court because of its insolvency, it is within the discretion of the court to permit an amendment, more than four months after such act, to allege that, being insolvent, the corporation applied for a receiver, as an amplification of the original allegation.

**2. Bankruptcy ⊂⇒84—New acts of bankruptcy cannot be alleged by amendment after four months.**

Wholly new and independent acts of bankruptcy cannot, by way of amendment, be set up more than four months after they were committed.

**3. Bankruptcy ⊂⇒91 (2)—Appointment of receiver because of insolvency; evidence admissible.**

Whether a corporation was insolvent when a receiver was appointed by a state court, and whether the appointment was "because of insolvency," constituting an act of bankruptcy under Bankruptcy Act, § 3a(4), being Comp. St. § 9587, are questions of fact to be determined by the bankruptcy court, and petitioning creditors are not limited to the record of the state court as evidence thereon, but may introduce evidence dehors the record, since, while the findings in the receivership suit are binding on the defendant therein, they are not conclusive on creditors, who were not parties, and the question whether the defendant was insolvent, as defined in the Bankruptcy Act, was not in issue therein.

In Bankruptcy. In the matter of the Cleveland Discount Company, alleged bankrupt. On reports of special master, ruling on admissibility of evidence, and on petition for leave to amend petition and exceptions thereto, exceptions sustained in part, and overruled in part.

The report of Referee Friebolin, as special master, on the motion of the alleged bankrupt to dismiss petition, was as follows:

"The original petition and the intervening petitions are before me, alleging one act of bankruptcy; that, being insolvent, within four months, because of insolvency of said company, receivers were put in charge of its property under the laws of Ohio. The answer of alleged bankrupt, so far as pertinent, denies that it was insolvent at the time of the filing of the petition, or at any time within four months thereof, and further denies that receivers were put in charge of its property because of insolvency. At the beginning of the hearing, attorneys for the alleged bankrupt introduced in evidence the petition, motion for receiver, and journal entry of the common pleas court, appointing receivers in the case of Hopple v. Cleveland Discount Company, and moved for a dismissal of the bankruptcy petitions herein. It is this motion that is now presented for disposition.

"The contention of the alleged bankrupt is that the only evidence admissible to prove the act of bankruptcy here alleged is the record of the court that made the appointment of the receiver, and that petitioners cannot be permitted to offer any other proof. (It is admitted that the three papers introduced constitute the entire record in case upon the subject in question.) In the words of one of the attorneys for the alleged bankrupt, the contention upon which the motion is based is that the exclusive proof whether the act of bankruptcy charged has been committed is the record of the case in the common pleas court. The motion is to be decided as though there were objection to the introduction by petitioners of any further evidence to prove the act of bankruptcy.

"Intervening petitioners (the original pe-

titioners have withdrawn from participation in the case and have declared their consent to a dismissal as requested by the alleged bankrupt) admit that the petition and decree in the common pleas court do not, upon their face, show the commission of the act of bankruptcy, but contend that they should be permitted to introduce other testimony in an effort to prove the act of bankruptcy alleged. This is the sole question for determination.

"The act of bankruptcy alleged, sometimes called the fourth act of bankruptcy, is described in the act in section 3a (4): 'Made a general assignment for the benefit of his creditors, or, being insolvent, applied for a receiver or trustee for his property or because of insolvency a receiver or trustee has been put in charge of his property under the laws of a state, of a territory, or of the United States.' Comp. St. § 9587. Section 3b provides: 'A petition may be filed against a person who is insolvent and who has committed an act of bankruptcy within four months,' etc. Section 1a (15) defines, not the word 'insolvency,' but provides: 'A person shall be deemed insolvent within the provisions of this act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed * * * shall not, at a fair valuation, be sufficient in amount to pay his debts.' Comp. St. § 9585.

"The United States Supreme Court has never decided the question we have here presented. There is no case in the Sixth Circuit Court of Appeals involving the exact issue presented, nor has the District Court for this district decided the question. There are a number of decisions by other Circuit Courts of Appeals, and some by other District Courts. In most of them the general contention made by the alleged bankrupt herein is supported by the language used by the courts. But in these cases very few are directly in point, because the decisions are not based upon an offer of testimony dehors the record, nor upon a motion, as in the instant case, based upon the proposition that the record in the state court is the exclusive testimony available to the petitioning creditors to prove the act of bankruptcy. To note them briefly:

"In the matter of Douglas Coal & Coke Co. (D. C. Tenn.) 12 Am. Bankr. R. 539, 131 F. 769, there was no offer of testimony dehors the record and objection thereto. The petitioning creditors asked the special master to find, from the fact of bankruptcy insolvency (which the special master found to exist), that insolvency was the underlying cause of the appointment of a receiver. The special master refused to look beyond what appeared on the face of the record. The District Court confirmed the report.

"Matter of Perry Aldrich Co. (D. C. Mass.) 21 Am. Bankr. R. 244, 165 F. 249: In this case no issue was made of testimony aliunde. It is evident that the testimony of the judge of the state court as to his reasons for appointing the receiver was admitted before the District Judge without objection.

"Blue Mountain Iron & Steel Co. v. Portner (C. C. A. 4th Cir.) 12 Am. Bankr. R. 559, 131 F. 57, 65 C. C. A. 295: In this case the alleged bankrupt, not the petitioning creditors, offered as witness the judge who appointed the receiver, in an effort to prove that the appointment was not because of insolvency. Objection to the question by petitioning creditors was sustained. The Circuit Court of Appeals sustained this ruling, holding that the record of the proceedings in the state court was the best evidence, and was 'competent as a link in the evidence in the issue'; also stating that 'public records can neither be explained nor varied by parol testimony.'

"Matter of Spalding (C. C. A. 2d Cir.) 14 Am. Bankr. R. 129, 139 F. 244, 71 C. C. A. 370: There is nothing in the report of this case to show that petitioners offered evidence outside of the record in the state court. The Circuit Court of Appeals reversed the District Court, which had entered an adjudication on the evidence before it, and said that 'the court, in exercising its authority, did not purport to do so upon that ground [insolvency—Master], and that the order appointing the receiver and reciting the grounds for the action of the court is conclusive to the contrary.'

"In re Edward Ellsworth (D. C. N. Y.) 23 Am. Bankr. R. 284, 173 F. 699: This case arose on a motion in the federal court of bankruptcy to restrain equity receivers from selling the company's assets pending the determination of the issue on a petition for adjudication. The court refused to enjoin the sale. There was naturally no question in the case of testimony offered dehors the record to prove the act of bankruptcy.

"Matter of Crystal Ice & Fuel Co. (D. C. Mont.) 49 Am. Bankr. R. 396, 283 F. 1007: It does not appear that any evidence outside the record, except as to assets and liabilities, was offered by petitioning creditors. The court permitted evidence of the fair value of assets and amount of debts because

(page 400) 'the record is indefinite or ambiguous in respect to the character of the insolvency because of which the receiver was appointed, .* * *' continuing: 'If the record of the receivership disclosed the latter was because of the insolvency under the Bankruptcy Act, it would be final and conclusive, * * * and no issue could be raised in respect to insolvency then or thereafter, save in so far as strangers to the record may collaterally impeach it.'

"Badger Co. v. Arnold (C. C. A. 1st Cir.) 49 Am. Bankr. R. 72, 282 F. 115: A motion to dismiss was filed by the alleged bankrupt in this case, similar to the one in the instant case, on the ground that the bill in equity on its face showed no act of bankruptcy had been committed. The bill in equity upon which the receivers were appointed was incorporated in the motion by reference. The District Court granted the motion, but the Circuit Court of Appeals reversed it, on the ground that the motion was not authorized, in effect holding that the record in the equity case was a matter for the alleged bankrupt to plead and prove. The court does, however, go on to discuss the question of the conclusiveness of the equity decree, although stating that they do not regard the question open in this appeal, because not essential to a determination of the case. 'As the decree in the equity suit shows definitely that the company was not put in the hands of receivers because of insolvency in the bankruptcy sense, * * *' we regard the question of its conclusiveness determined for this circuit by our decision in Re William S. Butler & Co., Inc. (C. C. A., 1st Cir.), 30 Am. Bankr. R. 502, 207 F. 705, 125 C. C. A. 223.'

"Matter of Conn. Brass & Mfg. Co. (D. C. Conn.) 43 Am. Bankr. R. 376, 257 F. 445: The petition for adjudication alleged that defendant, being insolvent, applied for a receiver, and because of insolvency a receiver was put in charge. The question for decision arose on a motion to dismiss the petition for adjudication, on the ground that the bill in equity upon which a receiver was appointed showed on its face no act of bankruptcy was committed. The bill in equity was incorporated in the motion. The judge granted the motion (apparently contrary to ruling in Badger v. Arnold, supra). It does not appear that petitioners offered testimony dehors the record, or contended for that right, but, on the contrary, that they relied on the record. The court says that it would be going too far to say that a corporation 'at least solvent' (i. e., assets in excess of

liabilities, although commercially insolvent —Master), 'so far as the record shows committed an act of bankruptcy by applying for * * * or joining in an application * * * simply because it had not the ready cash,' etc.

"Maplecroft Mills v. Childs (C. C. A. 4th Cir.) 35 Am. Bankr. R. 311, 226 F. 415, 141 C. C. A. 245: Petitioning creditors introduced the record of the suit in the state court in which a receiver was appointed. The District Court without hearing further testimony from them, and without permitting the alleged bankrupt to introduce any evidence, held that the court should construe the record of the state court, and determine from the face of that record whether a receiver had been put in charge because of insolvency. Accordingly the District Court directed a verdict in favor of the petitioners. The question before the Circuit Court of Appeals was whether the court below erred in holding that it sufficiently appeared from the record that the alleged bankrupt was insolvent as contemplated by section 3a. The court holds that it did not; that the petition of the state court showed merely that the company was in imminent danger of insolvency. The court holds that the District Court 'erred in holding that the company was insolvent in the sense in which the term is used in the Bankruptcy Act. To say the least, respondent was entitled to have the question as to its insolvency tried by a jury.' The question here seems to have been upon the proof of the requirement in section 3a (4), 'being insolvent,' rather than that of 'because of insolvency a receiver was put in charge.'

"Exploration Mercantile Co. v. Pacific, etc., Co. (C. C. A. 8th Cir.) 24 Am. Bankr. R. 216, 177 F. 825, 101 C. C. A. 39: The question considered by the court was the sufficiency of the creditors' petition; so far as appears, there was no offer to prove anything dehors the record. The court held that the facts appearing upon the face of the record in the state court in the suit in which a receiver was appointed, coupled with the fact of insolvency charged in the creditors' petition, are sufficient to constitute an act of bankruptcy. The act of bankruptcy charged was that the alleged bankrupt, being insolvent, applied for a receiver. The state court suit was brought by a stockholder, and alleged assets in excess of liabilities, but danger of waste by litigation, etc. The defendant joined in the prayer for a receiver.

"Stewart Petroleum Co. v. H. C. Boardman (C. C. A. 8th Cir.) 45 Am. Bankr. R. 573, 264 F. 826: The petition for adjudica-

tion alleged that, because of insolvency, a receiver was put in charge. The District Court entered an adjudication. In the state court a creditor filed suit and alleged that defendant's property was so incumbered that it was insolvent and that its officers had abandoned its business. The defendant answered that the allegations were so far true that it joined in the prayer for a receiver. There is nothing in the report of this case to indicate what evidence was offered. The alleged bankrupt challenged the sufficiency of the pleadings and proof, on the ground that former contains no averment and the latter no substantial evidence that a receiver was put in charge because of insolvency. In answer the Circuit Court of Appeals, on appeal by alleged bankrupt, says: 'But the only grounds for the appointment of a receiver alleged in the complaint therefor were that the Stewart Company (alleged bankrupt) was in an insolvent condition (no reference to assets and liabilities to show bankruptcy insolvency—Master) and the abandonment of its business by its officers. On those averments a receiver was appointed, and these facts are ample to sustain the rational and logical conclusion that he was appointed because of the insolvency of the Stewart Company.'

"Matter of Sedalia Co. (D. C. Mo.) 45 Am. Bankr. R. 287, 268 F. 898: It does not appear that the question of admissibility of evidence aliunde arose in the case. The District Court made an adjudication. The court considers chiefly the meaning of 'insolvent' and 'insolvency' as used in section 3 of the act. The petition in the state court alleged that business of defendant could not be conducted, except at a loss, etc., but did not allege that liabilities exceeded assets. The District Court says: 'The question here is a nicer one, made so by a tendency toward what I regard as ultra strict construction in a number of federal jurisdictions.' The court refuses to yield acceptance to this view, 'in view of the manifest spirit and purpose of the act.' Continuing, the court says: 'There are perhaps holdings which intimate that the issues framed on the pleadings and the decree of the court presumed to be responsive thereto are decisive of this question, but to this I cannot agree at all. This again would suggest a ready means of evasion to the skillful pleader. The spirit of the Bankruptcy Act requires that this consideration must be one of substance, rather than of technical pleading. * * *' The court finds that the company was insolvent (in the bankruptcy sense), and that the rec-

ord shows that the receivership in the state court was because of that insolvency. Page 292 (268 F. 898). In other words, the court concludes that it is the only possible inference to be drawn from the petition, which contemplated a receiver for an indefinite period and liquidation and distribution of company's assets, etc.

"A synopsis of the two cases in the Sixth Circuit and one in the Southern District may be helpful. They bear indirectly, at least, upon the question before us:

"James Supply Co. v. Dayton Coal Co. (C. C. A. 6th Cir.) 34 Am. Bankr. R. 649, 223 F. 991, 139 C. C. A. 367: There was a trial to a jury upon the petition for adjudication, and judgment of dismissal entered by direction of the District Court. The act of bankruptcy relied upon was that the alleged bankrupt, being insolvent, applied for a receiver of its property. The receiver was asked in a suit brought by three creditors of the company. There was testimony in the District Court tending to show that the suit in the state court was instituted by the plaintiffs at the instance and for the benefit of the company, and through its representatives. The original petition in the state court alleged the company's insolvency, but in the amended petition this allegation was withdrawn. The company entered appearance and waived service of process. The Circuit Court of Appeals holds that, if the receivership was procured at instance of and by consent of three representatives of the company, as the testimony tended to prove, it was as effectively an act of bankruptcy as if the suit had been directly in the name of that company as complainant. Accordingly the District Court was reversed, on the ground that the issue should have gone to the jury.

"Greenwood Gun Co. v. Zimmerman (C. C. A. 6th Cir.) 30 Am. Bankr. R. 198, 240 F. 637, 153 C. C. A. 635: A creditor filed a petition in the common pleas court against the company, named other creditors, and urged that income was insufficient to pay running expenses, that assets were insufficient to pay liabilities, and that it was insolvent, with not sufficient property to pay debts. Defendant by answer admitted it was largely indebted, without funds to pay salaries or sufficient working capital to carry on business and pay obligations which will fall due; that it is insolvent by reason of these conditions. There was no denial in terms of the allegation that defendant's assets were insufficient to pay its debts. Journal entry found that allegations of the peti-

tion are true, and that defendant is unable to meet its obligations, and that company is insolvent, and by consent appointed Greenwood receiver. Petitioning creditors alleged a receiver appointed and put in charge on the ground that the company was insolvent. Alleged bankrupt answers, admitting appointment and that receiver was put in charge on the grounds alleged in the petition. To intervening petitions the company filed answer, denying insolvency and act of bankruptcy. Before the master, the company offered testimony to show that it was not insolvent at the time of the finding of insolvency in the common pleas court, whether by the test of state insolvency or bankruptcy insolvency. The master refused to hear the testimony, and the District Court confirmed the report and made an adjudication. The Circuit Court of Appeals says there are two questions: Must petitioning creditors prove the company insolvent? and does the mere fact that a receiver was appointed by the state court upon the ground of insolvency once and for all conclude the bankrupt, so that the subject cannot be further litigated? The court finds it unnecessary to determine whether the word 'insolvency,' as used in this act of bankruptcy, means state of bankruptcy insolvency, because the record in the common pleas court suit sufficiently shows that the company was insolvent by both tests. The court continues: 'The petition in that case * * * expressly alleged the company was insolvent and that its assets * * * were insufficient to pay off and discharge its debts. * * * The order of appointment does not show that hearing was had only on the petition, and answer. It in terms finds the allegations of the petition to be true and that company is insolvent. * * * It thus appears of record that "because of insolvency a receiver * * * has been put in charge" of the debtor's property "under the laws of a state." The case is thus brought directly within the letter of section 3a (4). The fact that the order also recites conditions consistent with an insolvency in the (state) sense * * * does not alter the situation, for there is, as has been said, an express finding that the allegations of the petition (which asserted insolvency in the bankruptcy sense) are true, as well as an express finding of insolvency in general terms. * * * It is enough that insolvency was one of the grounds, although not the only ground, for the receivership. * * * It results, first, that the petitioning creditors in this proceeding were not required to prove, otherwise than by the record judg-

ment of the court of common pleas, * * * that the company was insolvent, and that because of that insolvency its property had been put in charge of the receiver appointed by the court under the laws of Ohio; second, there having been no pleading directly attacking the judgment of that court, evidence in support of the collateral attack attempted to be made upon it in this case was not competent.'

"Hilb v. American Smelting Co. (D. C. Ohio) 46 Am. Bankr. R. 427, 275 F. 384: In the state court a petition was filed by Cantor, a director of the company. Cantor alleged that he had indorsed notes of the company, then past due, and some not yet due; that defendant was indebted to divers creditors; that some had brought suit; that judgments and executions were threatened against defendant's property, which, if thus offered for sale, would realize but a small part of its value, but if kept from such sale, and the product sold in the usual course of business, the property would be conserved and would benefit creditors, plaintiff, and all parties in interest; that the assets of defendant at a fair value were more than sufficient to pay all its debts; that the company was amply solvent, but owing to the present financial stringency the assets were in danger of being dissipated and impaired. The decree specifically found that the plaintiff's notes were unpaid, and that unless a receiver were appointed the defendant's assets would be dissipated to the irreparable damage of plaintiff; that the defendant is solvent, and that its assets are in excess of its liabilities. A special master in federal court found the company insolvent in the bankruptcy sense. Judge Peck, after stating these facts, asks: 'Do these facts show that because of insolvency a receiver has been put in charge of the defendant's property under the laws of the state of Ohio, within the meaning of section 3a (4) of the Bankruptcy Law?' The petition shows beyond a peradventure that the defendant was unable to meet its obligations in due course. * * * This situation shows a condition of insolvency, as the term is commercially used, and within the meaning of the laws of Ohio. * * * It is impossible to conclude otherwise than that the defendant then was, and by the plaintiff's petition in the [state] insolvency court was alleged to be, insolvent, in that sense of the term in which it has been used in the law of Ohio. He did not say it was insolvent, but he pleaded facts showing its insolvency within such meaning, and those facts were the basis for the appointment of the receiver.

He was indeed careful to aver that it was solvent in the sense of the Bankruptcy Law. * * * That the plaintiff, Cantor, alleged that the corporate assets were more than sufficient to meet the obligations was mere surplusage and immaterial, and obviously designed to avoid the effects of the Bankruptcy Law. That allegation added nothing to his cause of action. His petition for a receiver and liquidation would have been as strong, had he alleged the reverse. If we assume that the finding in the entry * * * "that his assets were more than sufficient to meet his liabilities" was intended to be a finding that the defendant was solvent in the sense that its assets were more than sufficient to meet its liabilities, it was not responsive to any direct issue made in the case, because Cantor's right to the redress he sought was not based upon, nor aided by, a showing of solvency within the bankruptcy meaning of the term, but upon insolvency within the common-law meaning of the term. That expression * * * is not an adjudication of solvency in bankruptcy sense which will be binding here, both because that issue was not involved and because the creditors generally were not parties to that proceeding. Reynolds v. Stockton, 140 U. S. 254, 268. The evidence, therefore, shows that the insolvency court acted upon a showing of commercial insolvency. Are we precluded here from determining the real extent of that insolvency, and whether it was in fact such insolvency as is defined by the Bankruptcy Law? * * * The court of insolvency acted upon the showing made that the loss was present. But should not this court, upon the petition of creditors, who were not parties to that proceeding, ascertain the true and real extent of that insolvency? Upon this subject there is a conflict of authorities. * * * Now, what have we here? An insolvent corporation in bankruptcy sense; a receivership upon a ground having the most real relation to such insolvency; a proceeding for the winding up of the corporation, sale of its assets, and distribution of the proceeds among its creditors. * * * And it seems to me that such is the conclusion which should be reached in the present case; otherwise one may allege a degree of insolvency just sufficient to bring the case within the state law, and procure the appointment of a receiver and the distribution of the assets of a corporation actually insolvent within the meaning of the Bankruptcy Law, and thus defeat what the amendment of 1903 to the Bankruptcy Law was obviously intended to accomplish—the administration of the estate of an insolvent corporation under the Bankruptcy Law instead of a state receivership invoked for that purpose. * * * Obviously, the receivership application in the state court would be made to conform to the laws of the state, and good pleading would require the applicant to go no further. In other words, it would seem that the words "under the laws of a state" may be fairly deemed to apply to the entire preceding phrase. * * * To read it otherwise is to leave it optional with the applicant for a receiver of a corporation, that is actually insolvent under the bankruptcy definition, whether by disclosing the entire fact, to subject the corporation to the Bankruptcy Law, or, by disclosing only so much as is necessary to comply with the state law definition, to avoid bankruptcy and accomplish a winding up and distribution in the state court, and perhaps leave in force preferences or judgments secured within four months, which an adjudication of bankruptcy would destroy. Such construction seems hardly consistent with the title of "An act to establish a uniform system of bankruptcy throughout the United States." It would permit any one interested in the corporation, avoiding direct corporate action, to obtain for the corporation that which it could not obtain by means of a general assignment or an application on its own behalf for a receiver. Such, indeed, was the attempt in the present case.'

"It must be obvious, from even a cursory examination of the cases referred to, that there is no unanimity of decision or construction upon the act of bankruptcy in question; also it seems plain that the admissibility of particular evidence depends largely on the construction put upon the language used in the description of the act of bankruptcy. In my opinion the motion of the alleged bankrupt should be overruled, and the petitioning creditors should be permitted to introduce evidence dehors the record to prove the act of bankruptcy. I am impelled to this conclusion by a number of considerations:

"(1) It seems to me that a reasonable and practical construction of the words used in this act of bankruptcy makes it essential for its commission (a) that the person be insolvent, as defined in section 1a (15), at the time of filing the petition in bankruptcy; (b) that he be insolvent, as defined in section 1a (15), at the time a receiver was appointed; (c) that a receiver was appointed and put in charge of his property because of insolvency

under the laws of a state (meaning insolvency as understood in the state law).

"The first requirement (a) we can pass by; while essential to adjudication, it is not part of the act of bankruptcy, described in section 3a (4).

"The second requirement—(b) 'being insolvent'—must be proven by the petitioners; i. e., they must prove that at the time the receiver took charge the assets of the person at a fair value were less than his liabilities. Conceding that the record of the state court is conclusive as to the cause of the appointment by the court of a receiver, can it be said to be conclusive of the actual condition of the person as to the relative value of his assets and liabilities? 'Being insolvent,' under the definition of that word in section 1a (15), is part of this particular act of bankruptcy. This fact must be proven by petitioners, besides the fact that because of insolvency a receiver was put in charge of his property. The words 'being insolvent' are followed by a comma; then follow the two alternative essential facts which, in addition to 'being insolvent,' must obtain, viz. either that (being insolvent) such person applied for a receiver (which makes a complete act of bankruptcy), or (being insolvent) a receiver was put in charge because of insolvency. So that, even if the record of the state court showed that because of insolvency a receiver was put in charge (which, as hereafter stated, would properly be only state insolvency, or commercial insolvency), the petitioners would still have to prove the person insolvent in the bankruptcy sense. The latter requirement has nothing to do with the cause of the appointment; it is apparent that the intention is to deny adjudication and administration in bankruptcy of the affairs of persons who are not insolvent as defined by the Bankruptcy Act, regardless of their insolvency as defined by state law.

"Being an essential fact to be proven by the petitioners, and having no necessary connection with the cause of the appointment as that cause may be said to appear in the court records, the petitioners should be permitted to prove the alleged bankrupt insolvent as defined by the Bankruptcy Act, by such proof as they may have, and not be limited to the court record. Blue Mountain Iron & Steel Co. v. Portner, supra, where petitioners were permitted to prove company insolvent, although record held conclusive as to cause of appointment to be considered by jury.

"Let us consider the facts as they appear from the state court record in the case of Hopple v. Cleveland Discount Company: A stockholder, not a creditor, brings the suit. The facts in the petition on which he relies for appointment of a receiver have no relation whatever to insolvency; in fact, he expressly alleges that defendant is not insolvent, which must be taken to mean commercial insolvency. In substance, he says that the regulations of the company require a board of directors of 25, whereas at present there are only 11 qualified and acting, some of them living outside the state; that there are vacancies in the chief executive offices, which the board had been unable to induce satisfactory and qualified persons to accept; that the affairs of the company are being neglected and are without direction; that in the disorganized condition of the company's affairs it is impossible to induce officers of requisite standing and ability to undertake the company's rehabilitation and management; that defendant is financing various concerns which have buildings under construction, which, if interrupted, will cause great loss, etc.; that, unless prompt attention is given to these several matters, great loss and damage will be suffered by the stockholders. The decree found the facts in the motion and petition true, and appointed two receivers, with authority to take possession of the property and assets of defendant, to take charge of defendant's business, to continue it, etc., until further order of the court, to collect all claims due to the defendant, to prosecute and defend actions and employ attorneys, to complete contracts, and 'such other and and further authority as is ordinarily conferred upon receivers of corporations.' There is nothing in the decree which indicates that the receivership is to be temporary, or that the receivers are to arrange or permit a stockholders' meeting, in order to elect sufficient directors to conduct the corporation.

"The alleged bankrupt claims that the receivers were appointed on a well-recognized ground, quoting Fletcher on Private Corporations, § 5247: 'Lack of Governing Officers. A receiver should be appointed ordinarily on the application of a proper person, where there is an absence of governing officers necessary to conduct the business resulting from neglect to appoint or elect officers or from other causes. For instance, where directors who have been guilty of fraud all abandon the corporation, and a majority of them are in jail, and a removal of the directors by vote of the stockholders is impractical, receiver may be appointed in a suit to remove the directors and cancel the fraudulent stock.'

"It is apparent that the intention was, and the fact is, that the plaintiff in the Hopple Case does not rely on insolvency as an element in his cause of action for a receiver. The allegation of insolvency, as hereafter explained, is immaterial and surplusage, and binds no one. Conceding that the decree is the only evidence admissible as to the cause of the appointment by the state court, the bankruptcy court may still, from that decree and from the evidence on the requirement of being insolvent, determine whether the act of bankruptcy was committed. 'Looking to the practical bearing of the question, there is much reason to believe that Congress intended to make the appointment of a receiver in a state court conclusive as a ground of bankruptcy, without requiring this court to inquire into the grounds; [but] receivership, * * * in order to be a ground of bankruptcy, must have been on account of the insolvency of the corporation, and this leaves open in any case to inquiry by this court the grounds on which the appointment * * * was made.' Douglas Coal & Coke Co., supra. 'Petitioners had proved * * * that the company was insolvent, according to the definition of insolvency in the Bankruptcy Act. * * * Then the question arose: Was it on this account the receivers were appointed? The record of the proceedings in court was the best evidence, and there was no error in admitting it. As to the effect of this evidence, that was a question for the injury. * * *' Blue Mountain, etc., v. Portner, supra. 'In our opinion, these facts [in the application for receiver, master] appearing upon the face of the record in the state court, coupled with the fact of insolvency charged in the creditors' petition are sufficient to constitute an act of bankruptcy under the first clause [being insolvent, applied for receiver—Master].' Exploration Mercantile Co. v. Pacific Co., supra. See, also, Matter of Sedalia, supra, and Hilb v. American Smelting Co., supra.

"Conceding, as stated, that the record only may be introduced to show the cause of the appointment of receiver, that record is to be considered by the court or jury in the bankruptcy court, together with the evidence introduced to show that the person was then insolvent as defined in the act; considering all of this evidence, finding will be made whether or not the act of bankruptcy, 'being insolvent * * * a receiver was put in charge because of insolvency,' was committed. There is nothing in the record of the Hopple Case that should foreclose the federal court to inquire, and, if all the evidence should warrant, find that the act of bankruptcy has been committed, especially since the question of 'being insolvent' was not considered in this case. The suit in the state court was brought against a foreign corporation. The basis of the suit, as disclosed by the petition, is a matter involving the internal affairs of the corporation; a protection for itself, rather than to conserve the assets in this state for the benefit of creditors in this jurisdiction.

"In Fletcher on Private Corporations, § 5219, it is said: 'There is no jurisdiction to appoint receivers for a foreign corporation, although a receiver may be appointed for its assets in the state.' Section 5283: 'As a general rule, courts of a state or country will not interfere in the internal affairs and management of a foreign corporation, even at the suit of resident stockholders, and even though the corporation may be doing business in the state or country, and may have expressly or impliedly agreed to submit to the jurisdiction of the court in suits against it. A court of equity has no jurisdiction to dissolve a foreign corporation, or to appoint a receiver for it generally to take possession of all its assets, or to distribute its assets generally. It has, however, jurisdiction in a proper case, at the suit of a stockholder or creditor, to appoint a receiver of such assets as may be within the state, and to distribute the same in accordance with the equitable rights of the parties. A clear distinction is made by the authorities between a suit against a foreign corporation, to conserve its property within the jurisdiction of the court for the benefit of creditors in or who may come into such jurisdiction, and an action to wind up a corporation or to regulate its internal affairs.'

"Although the petition is based upon a failure to secure efficient officers, the decree for a receiver is the usual decree for receiver to wind up and distribute the assets. It seems to me that most of the decisions, and certainly a reasonable regard for the rights of creditors sought to be protected by the Bankruptcy Act, require that the federal court inquire and find, from testimony to be introduced as to 'being insolvent' and from the record in the state court, the petition, application, and decree as they stand—conceding for the moment that no other evidence may be introduced in an effort to prove the cause of the appointment—whether or not the act of bankruptcy alleged in this case has been committed.

"B. If it be said that the proof of 'being insolvent' is not a separate and distinct re-

quirement of this act of bankruptcy, and is not to be proven except as the state court in its record finds solvency or insolvency, the conclusion would seem inevitable that this act of bankruptcy would never be susceptible of proof.

"(a) A state court is not concerned in any case of receivership with the fact that assets are more or less than liabilities. In any case in a state court, where insolvency must be alleged to warrant the appointment of a receiver, the only proof necessary is insolvency in a commercial sense; i. e., that the person is unable to pay his debts as they mature. Any allegation beyond that, to the effect that the assets are more or less than liabilities, is surplusage and immaterial. Judge Peck in Hilb v. American Smelting Co., supra. The relation of assets to liabilities not being material in a petition for state court receivership, a decree of the court pursuant to such petition is not res adjudicata, because it was not an issue in the case. 'The estoppel of a judgment extends only to the question directly involved in the issue, and not to any incidental or collateral matter, though it may have arisen and been passed upon.' Black on Judgments, § 508. See, also, section 617. The decree in any case in a state court being thus properly only a finding of binding effect that the person is insolvent in the commercial sense, it could, of itself, never be proof that the person was 'insolvent,' as the words 'being insolvent' must be held to require it. Certainly that would be a forced and narrow construction, and wholly destructive of the purpose and intention of Congress in enacting this provision.

"C. Conceding that a decree of a state court properly goes beyond the issues in the case before it, and finds a person insolvent in the commercial sense, but solvent in the bankruptcy sense, or, as in the instant case, where on the face of the petition there is no issue made of insolvency, the ground for receivership being lack of officers, etc.: If in such case the state court finds the person solvent, this is not binding upon creditors not parties to the suit. The general rule is that, while a judgment or decree is conclusive between the parties and their privies, a third person is not so bound, except as to the fact of the bringing of the suit and the judgment. 'As already stated, the judgment is not admissible evidence, against strangers, of the grounds on which the recovery was had. It is only the fact of the adjudication which can be thus proved. Black on Judgments, § 604. That expression [in the decree for a receiver finding defendant solvent in bankruptcy sense—Master] * * * is not an adjudication of solvency in the bankruptcy sense which will be binding here, both because that issue was not involved and because the creditors generally were not parties to that proceeding.' Hilb v. American Smelting Co., supra. The petitioning creditors in the instant case, nor any other creditors of alleged bankrupt, were in any sense parties to the state court receivership proceeding. Consequently they are not bound here by the findings as they appear in the state court record on the question of insolvency.

"D. The language of the act is that, being insolvent, * * * because of insolvency, a receiver has been put in charge of his property under the laws of a state, of a territory, or of the United States. The contention of alleged bankrupt is that the only possible way to learn of the cause of the receivership is from the record of the court appointing the receiver. The cause of the receivership may or may not be in the decree of the judge. I concede that the reason the judge appointed the receiver appears in the decree; that he was governed by the allegations in the petition, and, finding therein to him sufficient grounds, he made an order pursuant thereto. But this act of bankruptcy, in my opinion, does not occur when a court gives as its reason for appointing a receiver, the insolvency of a person; it occurs when a person, being insolvent in the bankruptcy sense, has receivers appointed for his property as a result of proceedings looking to receivership, brought because of the insolvency of such person, and culminating in the appointment of a receiver of his property. Whether the plaintiff alleges one reason or another in order to obtain a receiver in a state court is not necessarily the real cause; the real cause must be found from all of the facts and circumstances surrounding the transaction, including, of course, the preliminary essential that the person is insolvent in the bankruptcy sense.

"In this view there need be no impugning of the records of the court appointing the receiver. Admittedly that court acted on the pleadings and evidence before it. But the Bankruptcy Act gives creditors certain rights, when a person insolvent in the bankruptcy sense has had receivers placed in possession of his property because his insolvency prompted some one to obtain a receiver in order to conserve his assets, to liquidate them and distribute them. In such case, the Bankruptcy Act, in effect, says: The assets

of such insolvent shall be administered and distributed, not according to state laws, but under a uniform bankruptcy law, by the provisions of which creditors control the administration, and under which preferences given shall not be permitted. If this is not the common-sense construction of this act of bankruptcy, then its vitality is gone. Every lawyer knows that so-called friendly receiverships are of frequent occurrence. With the most honest motives, petitions for receiver can be drawn and decrees entered which, held to be conclusive of the cause of the appointment, will absolutely preclude creditors from availing themselves of a right which presumably Congress intended they should have.

"That some courts are cognizant of the results that will follow such ruling is evident from some of the cases herein referred to. There are, perhaps, holdings which intimate that the issues framed in the pleadings and the decree of the court, presumed to be responsive thereto, are decisive of this question [referring to phrase 'because of insolvency']; but to this I cannot agree at all. This, again, would suggest a ready means of evasion to the skillful pleader. The spirit of the Bankruptcy Act requires that this consideration must be one of substance rather than of technical pleading. * * *' Matter of Sedalia Co., supra. 'To read it otherwise [construing because of insolvency—Master] is to leave it optional with the applicant for a receiver of a corporation that is actually insolvent under the bankruptcy definition whether by disclosing the entire fact to subject the corporation to the Bankruptcy Law, or by disclosing only so much as is necessary to comply with the state law definition to avoid bankruptcy and accomplish a winding up and distribution in the state court, and perhaps leave in force preferences or judgments * * * which an adjudication of bankruptcy would destroy. Such construction seems hardly consistent with the title of "An act to establish a uniform system of bankruptcy throughout the United States." It would permit any one interested in the corporation, avoiding direct corporate action, to obtain for the corporation that which it could not obtain by means of a general assignment or an application on its own behalf for a receiver. Such, indeed, was the attempt in the present case.' Hilb v. American Smelting Co., supra.

"The construction I have advanced receives support from the fact that section 3a (4), called 'the fourth act of bankruptcy,' contains in reality three similar acts of bankruptcy, viz. assignments, application for receiver by a person being insolvent, and appointment of receiver because of insolvency. The latter two were added to this section because of the uncertainty as to whether the appointment of a receiver for an insolvent partnership or corporation constituted a general assignment, and therefore an act of bankruptcy. This amendment was intended to place all copartnerships and such corporations as may be adjudged involuntary bankrupts on the same footing as individual insolvents who attempt an equivalent fraud on the act. Collier on Bankruptcy (13th Ed.) p. 164.

"The dominant purpose of this entire section is to permit creditors, upon petition filed, to prove for administration to the bankruptcy court, the property of insolvent (in bankruptcy sense) persons when attempt is made to distribute such assets in another court. This purpose recognizes that there are receiverships for other purposes; e. g., when there is some subject of litigation, as an adjunct to which a receiver is appointed, to preserve certain property awaiting the outcome of the litigation, temporary receiverships, etc. It is only receiverships whose purpose is the liquidation of the assets that are contemplated in this section; receiverships of indefinite duration and involving distribution of all of the assets to creditors and others entitled thereto. As stated heretofore, when that is the purpose and reason for the appointment of a receiver for one insolvent in the bankruptcy sense, the appointment is because of insolvency. The record of the state court may have some bearing upon it. It may even prove it; but to make it the exclusive evidence is to deny creditors, for all practical purposes, a right to prove the act of bankruptcy described.

"Such construction is demanded by the pronouncements of the courts of the rules of construction to be applied to the provisions of the Bankruptcy Act (Comp. St. §§ 9585–9656). 'It should at all times be borne in mind that the act is remedial, and must be liberally construed, with a view of carrying into effect its obvious purposes and intent. In working out the objects of the act, the courts have not indulged in technicalities wherever a liberal procedure was consistent with the substantial rights of the parties in interest.' Collier (13th Ed.) p. 4. 'The Bankruptcy Law is a remedial statute, and should not be subjected to a narrow or illiberal interpretation; it should be construed reasonably and according to the fair import of its terms, with a view to effect its object

and to promote justice.' Black on Bankruptcy, § 4.

"The case of James Supply Co. v. Dayton, supra, lends strong support to the construction advanced. In that case the act of bankruptcy alleged was that, 'being insolvent, the person applied for a receiver.' The court reversed the District Court, on the ground that the latter should have permitted testimony to go to the jury which tended to show that the plaintiffs in the suit in the state court in which the receiver was appointed were in reality acting in behalf of the defendant, and that the suit was instituted at its instance and for its benefit.

"No distinction can fairly be made as between an inquiry to determine who the real parties in interest were, in contradiction of the record, in order to prove that the insolvent in reality filed the petition, as in the James Case, and as to what were the real facts motivating the filing of the petition where such facts are involved, as in the present case, especially when the two acts of bankruptcy are so closely related to one another. In presenting proof of the requirement that because of insolvency a receiver was placed in charge of alleged bankrupt's property, the petitioners may introduce the record of the state court; findings there made against the defendant, a party to the suit, are binding upon it. Greenwood Gum Co. v. Zimmerman, supra. In the case just cited, the Circuit Court of Appeals fails to refer to the necessity of petitioners proving, besides the ground for the appointment of a receiver, that alleged bankrupt was then insolvent. The court also holds the defendant in the state court (alleged bankrupt) concluded by a finding in the decree of the state court that defendant was insolvent in the bankruptcy sense. The court holds that in view of the record in the state court the petitioners were not required to prove the act of bankruptcy otherwise than by the record, and denied the alleged bankrupt's right to introduce evidence attacking the record, it having filed no pleading attacking it.

"The alleged bankrupt in the instant case contends that, since the bankrupt, under this decision, cannot introduce evidence outside the record, the petitioners also should be denied that right. This does not follow. In the first place, in the Greenwood Gum Co. Case, insolvency was an issue in the state court, and there was a definite and express finding thereon (as heretofore stated, it would seem that estoppel should extend only to disproving insolvency in the commercial sense, because such insolvency was the only

kind of material in the state court case). Second. The alleged bankrupt, to whom was denied the right to attack the record, was a party to the suit. In the instant case petitioners were not parties in the receivership suit. Third. The alleged bankrupt, in writing, by its first answer in the District Court, admitted that a receiver was appointed as alleged in the petition. Fourth. Alleged bankrupt filed no pleading in the District Court attacking a decree made in a case in which it was a party. In the instant case creditors filed a petition with sufficient allegations under the Bankruptcy Act, which directly asserted facts contradictory to those appearing in the record of the state court. Even in those cases adopting the strict and illiberal construction—i. e., that the cause of the receivership must be found in the record—evidence dehors the record is permitted where the decree does not in express terms give the reasons for the appointment.

"Counsel for petitioners argue that in the instant case, where there is an allegation of solvency in the state court petition, together with other allegations, and a decree merely finding the allegations of the petition true, evidence aliunde may be admitted even under the strict rule. To me, it seems that this is a distinction without a difference, although there are cases that support it. It appears to be an effort on the part of courts committed to the strict rule to escape from their entanglement. In the Matter of Perry Aldrich, supra, Matter of Spalding, supra, In re Edward Ellsworth Co., supra, and Matter of Crystal Ice & Fuel Co., supra, the language of the court gives support to this contention; for example, in the Matter of Spalding: 'If the court had merely appointed a receiver, without reciting the ground of its judgment, the record could have been referred to on the grounds shown by evidence aliunde.'

"Petitioners in the instant case also claim that, since the petition in the state court alleged solvency and the decree found the allegations of the petition true, there is ambiguity in the finding of solvency, because it does not appear whether commercial insolvency is meant, or solvency in the bankruptcy sense. As is evident from the views heretofore expressed, this does not seem to me to be material. The petition in the state court sets up a state of facts which are claimed to warrant appointment of a receiver, regardless of solvency or insolvency. Certainly the allegation of solvency was not necessary to make their case. The finding of the truth of the allegations, and hence finding the defendant solvent—regardless of

whether commercial or bankruptcy solvent is meant—was wholly irrelevant; it was not an issue, and operates as an estoppel against no one. Courts adopting the strict rule, however, might hold that the finding of the defendant solvent, without further amplification, was so ambiguous as to permit evidence outside the record to prove whether the defendant was actually solvent in the bankruptcy sense. As stated by the court in Crystal Ice & Fuel Co., supra, 'the record is indefinite or ambiguous in respect to the character of the insolvency because of which the receiver was appointed, and extrinsic evidence to clarify, but not to contradict, it, consistent with it, is of necessary resort, as it is in respect to any like judgment.'

"I find no case where, as in the instant case, the ground alleged for a receiver has no relation to insolvency (commercial insolvency) evidence was held admissible under the strict rule to explain the character of solvency or insolvency. A reading of the better considered cases in connection with the provisions of the Bankruptcy Act and an appreciation of its purposes leads to the conclusion that in the instant case the petitioners are not restricted to the record in the Hopple Case, but must be permitted to show the actual facts as to (1) alleged bankrupts being insolvent; and (2) being insolvent, whether the receivership proceeding was instituted to distribute the property of the alleged bankrupt because of insolvency.

"Accordingly, the motion is overruled. An exception is noted on behalf of the alleged bankrupt. If this ruling of the special master is sustained, testimony consuming a considerable time will probably be introduced in a full hearing upon the matter referred to him. If this ruling is not sustained, as the case now stands, no further testimony will be heard. Accordingly, by agreement of counsel, this report of the special master is certified to the District Judge, with request by the special master for instruction whether to proceed to take further testimony, as will be in order if the ruling made by him on said motion is sustained."

The following is a substantial portion of the report of Special Master Friebolin on the petition to amend, filed October 9, 1923:

"This matter came on before me upon the petition of Huenefeld and others, intervening petitioning creditors, for leave to file amended petition, and the motion of the alleged bankrupt for an order to dismiss said petition for leave to amend. ⁕ ⁕ ⁕ The intervening petitioners asked leave to amend the original petition in bankruptcy, by set-

ting up as a first cause of action the transfer of property to three creditors with intent to prefer such creditors, giving the dates, the amounts transferred, and the name of the creditors. In other words, the first cause of action in the original petition inadequately set forth is to be set forth specifically and in detail by this amendment. They also ask leave to set up as a second cause of action that the Cleveland Discount Company, being insolvent, applied for a receiver in the common pleas court on or about February 22, 1923. The receivership referred to is the same receivership which in the petition of the original petitioners is alleged to be an act of bankruptcy in this: That, being insolvent, receivers were put in charge of its property by the common pleas court on the same date.

"Quite briefly, as grounds for their prayer for leave to amend, these intervening petitioners in their petition for leave to amend set forth that the original petition herein was filed at the request of the alleged bankrupt and its representatives, and that at no time was there any intention that adjudication be had thereon; that the said original petition was filed for the sole purpose of precluding other creditors from filing such petitions, and thereby maintain administration in the state court; that the original petitioners, after the motion was granted to strike the first cause of action from the original petition, which set forth the preference in general terms, failed to plead specific facts constituting sufficient act of bankruptcy described as a preference in furtherance of a general scheme not to press the adjudication, although sufficient facts were at hand to set up a sufficient cause hereunder. The intervening petitioners further state that they assumed until June 26th that the original petitioners intended in good faith to prosecute the petition for adjudication, but that on the latter date they learned that it was the intention of the petitioning creditors to appear before the special master and consent to a finding that the alleged bankrupt was solvent, and hence would result in a dismissal of the petition; immediately upon report of such information they filed their petition to intervene, in order that the proceedings might be maintained, which was done upon a few hours' notice without possibility to secure certain facts now asked to be included in the petition by amendment. Attorneys for the Cleveland Discount Company deny the allegations of the petition, and object to the granting of leave to amend the

original petition by the insertion of either of the acts set forth.

"I. Counsel for both sides have submitted exhaustive briefs after full oral arguments. The cases cited are very numerous. I have examined them all, and, while they disagree in some particulars, in all of them the principle is recognized that the bankruptcy court has undoubted jurisdiction and power over amendments; that this general power is very broad, and should be exercised liberally, limited only by the inquiry whether to do so is in furtherance of justice.

" 'The power of a court of bankruptcy over amendments is undoubted and rests in the sound discretion of the court.' Armstrong v. Fernandez et al., 208 U. S. 324, 28 S. Ct. 419, 52 L. Ed. 514, 19 Am. Bankr. R. 746. (In the above case the Supreme Court found no abuse of discretion in the District Court's permitting an involuntary petition to be amended by perfection of verification and adding that the alleged bankrupt was not in the excepted class of wage-earner or farmer.)

" 'Bankruptcy proceedings are a branch of equity jurisprudence, and the rules of equity control rather than those of law. The bankruptcy court has the incidental power to grant any equitable relief which may be necessary in the administration and distribution of the estate.' Remington on Bankruptcy (3d Ed.) § 23, and the cases there cited.

" 'The courts are liberal in allowing amendments so long as the ends of justice are not sacrificed. The courts, in allowing such amendments, are governed by substantially the same principles which apply to similar cases in other courts. * * * An amendment may be allowed at any stage in the proceedings as justice may require. The power of the court is not limited in this respect.' Loveland on Bankruptcy, p. 421, and the cases there cited.

"Rule 19, U. S. Equity Rules: 'The court may at any time in the furtherance of justice on such terms as may be just permit any process, proceedings, pleading or record to be amended or material supplemental matter to be set forth in an amended or supplemental pleading. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.'

"Rule 11, General Orders in Bankruptcy: 'The court may allow amendments to the petition and schedules on application of the petitioner. Amendments shall be printed or written, signed and verified, like original petitions and schedules. In the application for leave to amend, the petitioner shall state the cause of the error in the paper originally filed.'

" 'In the first place, the uniform practice of the federal courts, founded on the public policy of the nation evidenced by acts of Congress and the rules of the Supreme Court, is to permit amendments in all judicial proceedings where they are necessary to enable parties to reach the merits of the controversy they attempt to present, and where the allowance of such amendments will work no injustice to any one.' In re Plymouth Cordage Co. (8 C. C. A. 1905) 13 Am. Bankr. R. 665, 135 F. 1000, 68 C. C. A. 434.

"The power of the court to allow amendments of involuntary petitions in bankruptcy being thus held to be very general and to be within the discretion of the court, limited only by the duty of the court to act in the interest of justice in each case, it is natural that the decisions should vary with the facts in each case. The decisions cited by the attorneys bear this out.

"It is conceded by the attorneys for the alleged bankrupt that, generally speaking, there is no limit to the time within which amendments may be allowed to an involuntary petition; that is to say, it is conceded that a petition defective for want of sufficient creditors or for failure to allege that defendant is in one of the excepted classes, or for failure to show an indebtedness to petitioners in the sum of $500 or a failure to allege that defendant owes at least $1,000. All of these defects, jurisdictional defects, may be cured by an amendment filed at any time, even though it be more than four months after the act of bankruptcy alleged in the original petition, and the amendment is held to relate back to the filing of the original petition. In any event, the cases cited quite generally support this rule. Collier on Bankruptcy (13th Ed.) pp. 660–664; Millan v. Bank (4 C. C. A.) 183 F. 753, 106 C. C. A. 327, 24 Am. Bankr. R. 889; Bank v. Haswell (8 C. C. A. 1909) 174 F. 209, 98 C. C. A. 217, 23 Am. Bankr. R. 330; Ryan v. Hendricks (7 C. C. A.) 166 F. 94, 92 C. C. A. 78, 21 Am. Bankr. R. 570.

"In some cases where a petition was found defective for want of sufficient number of creditors (only one creditor, when by answer of defendant it appears he had more than 12 creditors), the courts permitted the intervention of sufficient creditors at any time by reason of the provision of section 59d of the act rather than through exercise of equitable powers. Bank v. Haswell (8 C. C. A.) 174 F. 209, 98 C. C. A. 217, 23 Am. Bankr. R.

330. In cases where a creditor joining in the original petition was in fact not a creditor, or where the indebtedness to the original petitioners was less than $500, some courts have held that section 59f requires—not permits—giving permission to any intervening creditor to join in the original petition *at any time* before dismissal or adjudication, and that this action relates back to the original petition. Matter of C. Jutte & Co. (3 C. C. A. 1919) 44 Am. Bankr. R. 166, 258 F. 422, 169 C. C. A. 438. (In this case four years had elapsed.) Contra: Diamond Fuel Co. (2 C. C. A.) 283 F. 108.

"II. The difficulty and the divergence in opinion arises in cases such as the one before us, where an act of bankruptcy not charged in the original petition is set forth in the amended petition and occurred more than four months prior to the time that *leave to amend is asked*, although occurring within four months of the *filing of the original petition.* The cases almost without exception, no matter whether they permit or refuse such amendment to be filed, assert the undoubted jurisdiction of the court to permit *any* amendment in furtherance of justice when the facts require it. The courts differ, however, in setting the discretionary limits of this power based upon the emphasis they place upon the salutary requirement of section 3b of the act that involuntary petitions must be filed within four months of the commission of the act of bankruptcy. After reading all of the cases cited by counsel, I can find no more concise and accurate statement of the law upon this phase of procedure than is found in Collier on Bankruptcy (13th Edition) p. 664 (the underscoring herein as elsewhere is mine):

" 'Insertion of New Act of Bankruptcy.— As a general rule an involuntary petition cannot be amended by setting out therein an act of bankruptcy *not referred* to in the original petition and occurring more than four months before application for the order allowing the amendment. This rule rests upon the theory that to allow a substantial amendment—that is, one going to the whole foundation of the proceeding nunc pro tunc —would be a direct violation of a limitation obviously for the benefit of the debtor, namely, the requirement that proceedings must be brought within a limited time after the act of bankruptcy is committed; i. e., under the present statute, four months. But such amendment may be permitted if clearly in furtherance of justice, and if its omission from the original petition is properly excused. Even if the court has power to allow an amendment to a petition setting up a *new, separate,* and *independent* act of bankruptcy which occurred more than four months before the application to insert it in the petition, it ought not to do so, *except upon a showing* that the petitioner was duly diligent and that the interests of justice require such action. The tendency of the decisions is toward a more liberal practice in granting amendments and in some of the later decisions it has been held that it is discretionary with the court to permit the petitioner to insert by amendment additional acts of bankruptcy. Where the amendment offered shows acts of bankruptcy of like character as the one attempted to be shown in the original petition, the amendment should be allowed. Thus, where an involuntary petition alleges the giving of a preference as an act of bankruptcy, an amendment will be allowed so as to permit the petitioner to set up the giving of another preference.

" 'Amended Petition Filed after Four Months.—An amended petition may be filed after four months have elapsed since the commission of the act of bankruptcy charged, *especially* where the same act is relied on, and it is alleged in substantially the same words; the amended petition relates back to the date of the original petition. But the doctrine of relation back is not applicable where the amendment sets up a new cause of action, or where to cause it to relate back would have the effect of depriving an adverse party of a substantial right on which no attack was made in the original pleading.'

"It is to be noted, first, that the statement always is 'as a general rule' implying clearly that the ordinary case where amendments are asked and granted as of course is not one in which a new act of bankruptcy is proposed to be set up; second, while courts do not permit such amendments as a *general rule,* they will permit them where the facts are such as show a *condition* requiring such action in the interest of justice and where no harm is done to the alleged bankrupt or those having dealt with him in good faith; third, the question of whether the amendment *when permitted* should by the court be held to relate back to the original petition or whether because of probable injury to innocent persons should, as to some particular act (e. g., a lien obtained more than four months before the *amendment),* be held not to relate back. The only part of the quotation from Collier which I do not comprehend, and which seems inconsistent with the remainder of his statement, and for which I find no

authority, is 'that the doctrine of relation is not applicable (he makes no exception) where the amendment sets up a new cause of action. * * *' If the word following 'or' were 'and' it would be reconcilable with the remainder of his text and would have support in principle and authority. Armour v. Miller (5 C. C. A.) 209 F. 784, 126 C. C. A. 508, 31 Am. Bankr. R. 356.

"The argument in favor of the exercise of the power of granting leave to amend by adding entirely new acts of bankruptcy occurring within four months of the original petition, though more than four months prior to the application to amend, proceeds on the theory a petition for adjudication is one lawsuit, and that if a real petition—i. e., one on its face warranting adjudication—is filed, it is in the nature of lis pendens; that is, all the world has notice of the proceeding to declare the defendant a bankrupt, and is charged with notice that the court may exercise its power in the interest of protecting the rights of creditors granted in the Bankruptcy Act, to include in the petition by amendment any other facts occurring *within four months* of the filing of the original petition which may form the basis of an act of bankruptcy. Of course, in every case proper showing by the petitioners of reasonable diligence must be made to the court.

"In Bank v. Sherman, 101 U. S. 403, 25 L. Ed. 866, the court had before it the question of the title to certain securities transferred by the bankrupt between the filing of the original petition and the amendment. The amendment added new causes of action alleging a new act of bankruptcy, occurring within the requisite time—six months under the former Bankruptcy Act—next preceding the filing of the *petition.* There was no question of the right to amend. The court, however, uses this language: 'The continuity of the proceeding from the outset was unbroken. The original petition was amended by inserting an act of bankruptcy which occurred before the petition was filed, * * * but the original petition was in no wise either dismissed or abandoned. * * * The assignment [meaning the transfer by operation of law] related back to the commencement of the proceeding. * * * It was the genius and purpose of the statute to secure this result [equality among creditors], as far as possible, from the moment its aid was invoked, whether by debtor or creditor. The power of amendment is incidental to all judicial administration. Its exercise is vital to the ends of justice. * * * The filing of the petition was a caveat to all the world.

* * * Thereafter all the property rights of the debtor were ipso facto in abeyance until the final adjudication. If that were in his favor they revived and were again in full force. If it were against him, they were extinguished as to him and vested in the assignee. * * * 'The bankrupt became, as it were, for many purposes, civiliter mortuus. Those who dealt with his property in the interval between the filing of the petition and the final adjudication did so at their peril. They could limit neither the power of the court nor the effect of the final exercise of its jurisdiction. With the intermediate steps they had nothing to do. The time of the filing of the petition and the final result only concerned them.'

"In the case below the Circuit Court of Illinois used these words in its opinion (Sherman v. International Bank, Fed. Cas. 12,765): 'If a petition were filed upon which a court could not enter a decree, which could not be considered within the meaning of the law a real genuine petition in bankruptcy, then it might be true that, where an amendment were allowed so as to give it effect as a petition in bankruptcy, the assignment would only take effect from the latter date. But where a legal petition in bankruptcy is filed, it is subject always to the right of the parties who are petitioners, whether the bankrupt or the creditors, to make the amendments to the petition. It is filed subject to the power of the court to allow amendments, and therefore that is a condition which must always be understood, that it is subject to the right of the petitioners to make amendments and to the power of the court to permit them, and, when made, they as a general rule relate back and take effect from the time the petition in bankruptcy was filed.'

"In the case before us we have at all times had a sufficient petition in bankruptcy; that is conceded. It requires no amendment to make it valid. Why, if the facts and circumstances surrounding this case are such as to warrant the conclusion that justice and fair dealing and a reasonable regard for the rights of creditors granted to them by the Bankruptcy Act require it, should leave to amend be withheld as prayed for? Why should not creditors, if guilty of no conduct prejudicial to the bankrupt or bona fide lien claimants, be permitted to include by amendment any act of bankruptcy occurring within four months of the filing of the original petition, and be permitted thereby to try the question of the alleged bankrupt's liability upon its merits? What are the facts and cir-

cumstances surrounding the proceedings in the case before us? The evidence adduced substantially supports the allegations of fact made by the interveners in their petition for leave to amend. The evidence introduced was entirely that of two of the original petitioning creditors testifying under oath before the master supplemented by a written statement (affidavit) of Mr. Rothenberg, attorney for the original petitioners, submitted by agreement of counsel. No testimony was offered by the alleged bankrupt in contradiction.

"The uncontradicted evidence quite clearly shows that on February 22, 1923, there was a meeting at the offices of the Discount Company or those of Mr. Peck, its attorney, attended by Messrs. David and Hogsett, then state court receivers, Mr. Thompson, at that time attorney for Hopple in the state receivership suit, subsequently one of the attorneys for the receivers, and now one of the attorneys for the Discount Company, alleged bankrupt, Mr. Berne, one of the attorneys for the state receivers and now one of the attorneys appearing for the Discount Company in opposition to adjudication, Mr. Flynn, first vice president of the Discount Company, and Mr. Peck then secretary and general counsel for the Discount Company. Mr. Peck's name appears in the pleadings in the state receivership case as representative of the Discount Company and in the answers of the alleged bankrupt as sole attorney for the Discount Company. The state receivers had been appointed when on this date Mr. Flynn came to the offices of one of the original petitioners, Mr. McNeil, and asked him whether he was a creditor of the Discount Company. Upon an affirmative reply, Mr. Flynn asked McNeil to come down to the office, where he was introduced to Mr. Thompson by Mr. Flynn. Mr. Becker and Mr. Kennedy, others of the original petitioners, were asked to come down, and they also were introduced to Mr. Thompson.

"Thereupon Mr. Thompson, assisted probably by others in the room, stated to the three original petitioners that state receivers had been appointed for the company and that it was desirable that all persons interested in its affairs do what was possible to save as much of expense and charges incident to litigation; that there was danger of bankruptcy proceedings, which would be very costly, and that the affairs of the company could be carried on to greater advantage to all parties interested by friendly receivers in the state court; that the proposed petition in bankruptcy would prevent others being filed, and they would not be called upon to pay anything; explained the nature of a bankruptcy proceeding and the wisdom and advisability of the bankruptcy petition proposed. Mr. Thompson then called Mr. Rothenberg, an attorney, over to this gathering. The petitioning creditors did not know him nor his firm.

"Upon Mr. Rothenberg's arrival, Mr. Thompson asked him whether he had any claims against the Discount Company. Mr. Rothenberg did not know. Mr. Thompson then told him that he had three petitioning creditors right there. Mr. Thompson told Mr. Rothenberg about the state receivership; that the company claimed it was solvent; that he (Mr. Thompson) did not know as to that, but that an audit being made of the books would be necessary to determine it; that he thought it better that a high grade lawyer handle the bankruptcy proceedings, insuring its being done in an honorable way. Mr. Thompson then produced a bankruptcy petition, fully prepared, except for names of creditors and the amounts of their claims, alleging two acts of bankruptcy: That property had been transferred, constituting a preference, without specification of dates, creditors, or amounts, and the appointment of receivers because of insolvency. Mr. Rothenberg then and there filled in the names of the three petitioning creditors present and had them sign it. Mr. Thompson just prior thereto told the three creditors that Mr. Rothenberg was now their lawyer and they must deal with him. From that time on none of these original petitioners has seen or heard from Mr. Rothenberg. They have never consulted him. They were never advised of any plan to dismiss their petition, or of any proposal to consent to a finding against them on their petition. The only information they ever had was from the newspapers, and from a statement to Mr. McNeil, one of the petitioners, made by Mr. Thompson, when by chance he met Mr. McNeil and was asked about what was going on.

"The conclusion is quite obvious and irresistible that the receivership proceedings, in which the Discount Company was alleged to be solvent, and the bankruptcy petition, in which they were alleged to be insolvent, were filed and proceedings conducted thereunder as a result of negotiations and understanding reached between the Discount Company and the receivers and their attorneys; that in a limited way, at least, the petitioning creditors were parties to these plans. There seems to me no reason evident why the act of bankruptcy charging a

preference could not in the first instance have been definitely described. Mr. Thompson, when he delivered the petition to Mr. Rothenberg, was in the offices of the Discount Company. He was working in accord with at least one of its officers and its office attorney. The books of the company were right there, before them presumably.

"After this act of bankruptcy was stricken out, Mr. Rothenberg certainly could have obtained from the audit, if not from the books, facts that would have made the allegations of this act, of bankruptcy invulnerable to attack by motion to strike. Certain it is that the intervening creditors have apparently obtained the facts without such unusual opportunity. It is evident also why the original petition prepared by Mr. Thompson did not allege as an act of bankruptcy that the receiver was applied for by the Discount Company. In view of his activity in that behalf, his apparent belief, then and still held, that the advantage to all parties interested lay in administration in the state court, it would hardly be expected that so antagonistic an attitude would be shown as a charge that the receivership was instigated by the Discount Company.

"While it is evident that these intervening petitioners, at any time after February 22, could have become parties and joined in the petition under section 59f (Comp. St. § 9643), and made application to amend within four months, this is a rather legalistic and narrow view. It is hardly to be expected that, when an involuntary petition is filed, all creditors interested in having a full hearing upon the petition upon its merits should come into court and clutter up the records with intervening petitions. Rather is it the reasonable view that all other creditors have a right, until it becomes evident to the contrary, that the original petitioners are honestly intent upon producing every valid act of bankruptcy existing at the time, with the prevailing purpose of securing an adjudication for the benefit of all creditors, if insolvency and other requirements of the Bankruptcy Act obtain at the time. It follows that, if the circumstances surrounding the proceedings, their inception or subsequent conduct, indicate rather an interest in the debtor, and a failure to evince an intent to secure adjudication by resorting to every honest and practicable effort which would produce such result, then intervening creditors are entitled to the equitable assistance of the court to bring the cause for hearing upon its merits. They should be permitted to file such pleadings as the original petition-

ers, if diligent and acting with an eye to making a case for creditors, should and could have filed.

"It is not necessary, in order to grant the relief asked for, to find that there was actual fraud by the original petitioners, or by the alleged bankrupt, or by the receivers. It may be conceded that in this case they all honestly believed that the thing to do was to arrange a friendly receivership and a friendly bankruptcy proceeding. Certainly, so far as the record goes, none of them made any representation, except as herein described, to creditors in order to mislead them. But I take it that it is not for any one to say that the Bankruptcy Act is not designed for the benefit of creditors; that administration in the federal court, with the consequent benefits to general creditors, that the Bankruptcy Act attempts to give, is inferior to administration of an insolvent estate in a state court, and hence its purposes should be defeated if the means be at hand to effect such defeat.

"The national Bankruptcy Act was passed for a definite purpose. It gives creditors certain definite rights, to administration by a trustee of their choosing, to defeat preferences and the like. This they may have when three creditors present the pertinent conditions for adjudication. They are entitled to have that right protected by the court, by permitting amendments whenever, through any conduct calculated to defeat it, they are likely to be precluded from a hearing on the merits of the case as disclosed by the facts existing at the time the original petition was filed. It should be noted that this is not a debate as to the relative merits of administration of insolvent estates in state or federal court. There is no evidence in this record of how the present receivers have administered the property; no question is raised thereon, and it is not a pertinent inquiry; it may be conceded that they have faithfully and efficiently performed their duties. There is no evidence that the intervening petitioners are the only creditors interested in the petition in bankruptcy; if they are, nevertheless they have a definite right under the Bankruptcy Act to try their case.

"There is nothing in the record showing the amount of the assets of the Discount Company, nor of the number of creditors, nor of the desire of any number of creditors to continue the state receivership, nor of any prejudice to creditors through bankruptcy. In any event, such testimony would not be pertinent. Testimony tending to show that a petitioning creditor had participated in a state receivership in such manner as to estop

him from becoming a petitioning creditor would be competent. Ohio Motor Car Co. v. Eiseman (6 C. C. A.) 36 Am. Bankr. R. 237, 230 F. 370, 144 C. C. A. 512. There is no such testimony in this case.

"Much has been said about an 'audit.' There is nothing in the record as to what this audit is, or what it shows, or how and by whom it was taken. This so-called audit is presumably in the possession of those resisting the bankruptcy petition. It was not offered in evidence, and at the first hearing upon the intervening petition, subpœna having been issued for it by interveners, examination thereof was denied to the intervening petitioners by the attorneys for the Discount Company and receivers. Any assumption in the argument that there is a disinterested *appraisal* of the assets of the Discount Company, which shows an excess over the amount of liabilities, or shows anything else, is purely gratuitous. There is absolutely no evidence with regard thereto.

"Ever since the day a state receiver was appointed, there has been on file a bankruptcy petition, which at all times contained allegations of a sufficient act of bankruptcy, which act was the appointment of the receivers. Any cases considering the equities of a plea for leave to amend a petition, which had been dismissed or abandoned, and after which state administration was had, present an altogether different situation. In the instant case all the world had notice of the pendency, from the day of the state receivership, of a valid petition in bankruptcy. With regard to the diligence of the intervening petitioners, it seems to me that they acted with reasonable promptness upon learning of the proposed plan to have a finding against the petition made by consent of the original petitioners. They almost immediately filed a petition in intervention. About ten days thereafter, at the first hearing, they publicly declared their intention to apply for leave to amend, and within two days filed their application.

"III. In my opinion it is not necessary to hold to the broad principle just discussed in order to find reason and authority for granting the petition for leave to amend. By the weight of authority and especially under the principle adopted by the Circuit Court of Appeals of the Sixth Circuit, both amendments proposed should be permitted.

"(a) The original petition set forth the act of bankruptcy, generally referred to as a preference, in language of the statute, without giving details. The amendment supplies these details, namely, definite allegations of time, place, and amount, and the names of creditors. Admittedly the application for leave to amend occurred more than four months after these transactions; they did occur, of course, within four months of the filing of the original petition. It seems to me that the case of International Silver Co. v. New York Jewelry Co., 37 Am. Bankr. R. 91, 233 F. 945, 147 C. C. A. 619 (6 C. C. A. 1916), must be held to determine the question favorably to the petitioners herein. In this case it was held that an allegation of a preferential transfer in the very language of the statute was sufficient to permit the filing of an amended petition, setting forth the specific dates and items of preference, although such amended petition was filed more than four months after such preference. The Circuit Court of Appeals reversed the lower court, which refused to permit the amendment, on the objection made thereto by an intervening creditor.

"One of the objections to the amendment was that the act of bankruptcy was not charged in the original petition, and occurred more than four months before the amendment was asked for. Judge Knappen uses these words in the opinion: 'The court had jurisdiction of the subject-matter and of the parties. The petition alleged a preferential transfer in the language of the statute, omitting only the information necessary to enable the bankrupt to meet the charge. The bankrupt consented to the amendment, thus removing the objection of lack of notice to the one directly concerned therewith. While the act of bankruptcy occurred more than four months previous to the amendment, it was within four months of the filing of the original petition. * * * In re Shoesmith (C. C. A. 7th Cir.) 13 Am. Bankr. R. 645, 135 F. 684, 688; In re Plymouth Cordage Co. (C. C. A. 8th Cir.) 13 Am. Bankr. R. 665, 135 F. 1000; Hark v. Allen (C. C. A. 3d Cir.) 17 Am. Bankr. R. 3, 146 F. 665; In re Brown Com. Car Co. (C. C. A. 7th Cir.) 227 F. 387; 1 Loveland on Bankruptcy (4th Ed.) pp. 419–426.'

"Speaking upon the jurisdiction to amend the court uses these words: 'The exercise of the jurisdiction to amend was, of course, within the sound discretion of the court, having in mind the interests of the creditors. * * * The record does not make it clear whether the action of June 26th under review (refusal to permit amendment) was taken upon a consideration of the merits, or because of a supposed lack of jurisdiction to grant petitioners the relief asked. If upon the merits, we think that on the record

here presented discretion was improvidently exercised.'

"It seems to me to be without question that in the instant case, upon the showing made by the intervening petitioners, the amendment should be permitted.

"In the International Silver Case there were no circumstances of a filing of a petition by arrangement. In that case a voluntary petition was filed after the involuntary petition was filed. Adjudication was had on the voluntary petition while a demurrer (motion to strike) was pending upon the involuntary petition based upon the insufficient allegations as to preference. The petitioning creditors thereafter, more than four months after the act of bankruptcy, asked for leave to amend, claiming that adjudication should be had on the involuntary petition, because, if the adjudication on the voluntary petition were permitted to stand, a preference to a bank would remain beyond the four months period, and hence valid. The District Court denied amendment and consolidated the cases as upon the voluntary petition. The bank contested the proceedings to revise in the Circuit Court of Appeals. The court reversed the District Court, because the ruling of the court below was not in the interest of creditors.

"The fact that in the instant case a motion to strike out the allegations of preference was granted, and the original petitioners declined to amend, seems to me not sufficient ground for denying the application of the reasoning in this case. It might be said, and is said by counsel for the Discount Company, that intervening petitioners should first apply to reinstate the cause of action in the original petition in its original form, and then ask leave to amend. This seems to me an unnecessary intermediate procedure, if the right to amend is with the interveners.

"(b) With regard to the second proposed amendment, that being insolvent the Discount Company applied for a receiver, by the great weight of authority this is regarded as an additional act having reference to an act already found in some form in the original petition, and hence allowable. As some of the decisions put it, the amendment may be allowed if the *new* act of bankruptcy in the amendment, although occurring more than four months prior to the application to amend, is founded upon or grown out of facts stated or referred to in the original petition. In re Nusbaum, 18 Am. Bankr. R. 598, 152 F. 835 (D. C. N. Y.); In re Ned Irish, 36 Am. Bankr. R. 185, 228 F. 573 (D. C. Pa. 1915); In re C. W. Bartleson, 42 Am.

Bankr. R. 1, 253 F. 296 (D. C. Fla. 1918); Hark v. Allen, 17 Am. Bankr. R. 3, 146 F. 665, 77 C. C. A. 91 (3 C. C. A. 1906); In re Brown Commercial Car Co., 36 Am. Bankr. R. 45, 227 F. 387, 142 C. C. A. 83 (7 C. C. A. 1915); Int. Silver Co. v. N. Y. Jewelry Co., 37 Am. Bankr. R. 91, 233 F. 945, 147 C. C. A. 619 (6 C. C. A.). Apparently contra: Matter of Condon (2 C. C. A. 1913) 31 Am. Bankr. R. 754, 209 F. 800, 126 C. C. A. 524; Matter of Havens (2 C. C. A. 1918) 42 Am. Bankr. R. 734, 255 F. 478, 166 C. C. A. 554 (obiter); Matter of Haff (2 C. C. A. 1905) 13 Am. Bankr. R. 362, 136 F. 80, 68 C. C. A. 646.

"While the cases in the Second circuit may be regarded as contrary, the fact is that they adhere to the general rule. In the first of them, approved in later ones, the court says: 'The general rule seems to be that an original petition cannot be amended by setting out therein acts of bankruptcy *not referred to in* the original petition and occurring more than four months before the application for an order allowing the amendment.' The difference seems to be in the opinion of what is regarded as sufficient allegations in the original petition to constitute a reference to the same act. In the Haff Case, for example, it does not appear what the act of bankruptcy in the original petition was, nor what the new acts proposed were; there may have been no relation between them. In the Havens Case the new act was a concealment of $30,000, there being no reference to any sum nor to a concealment of any kind in the original petition. The Circuit Court of Appeals reversed the lower court's order, striking out this new act, on the ground that this act of bankruptcy was a continuing act down to date, and not *complete more* than four months prior to the filing of the application to amend. The court thus allowed an entirely new and additional act of bankruptcy, which occurred prior to the original filing, but continued to within four months of the filing of the application to amend. In the Condon Case the original petition charged in general language transfers with intent to hinder and delay and also transfers with intent to prefer. By the amendment the allegation of preference was made specific. It does not even appear that the acts of preference set out in the amendment occurred more than four months prior to the application to amend. The Circuit Court of Appeals, without reference to the Matter of Haff or any other authority, eliminated these items. This case is obviously contrary to In-

ternational Silver Co. v. New York Jewelry Co. and to cases in other jurisdictions.

"In the last case decided by the Second Circuit Court of Appeals, however, it comes close, if it does not in fact, adopt the principles and reasoning of the proposition first referred to in this report, viz. that, if a petition fair on its face is pending, *any* amendment may be allowed in the interest of justice. In this case other creditors joined in the petition *more* than four months after the act of bankruptcy—a preferential transfer. The appellant claimed that one of the original petitioners was not a creditor, and that the intervening petitions of other creditors filed after the four months period did not validate it. Judge Hough, addressing himself to this question, says (283 F. 108): 'This court has, we think, clearly indicated the distinction between an amendment or addition to a petition *jurisdictionally defective* and similar action in respect of one *jurisdictionally sufficient.* An amendment inserting a new act of bankruptcy speaks only from the date of amendment (In re Havens, 255 F. 478, 166 C. C. A. 554, and cases cited), and any petition is jurisdictionally defective unless it pleads an act of bankruptcy in proper form. But in this case the original petition was not jurisdictionally defective. It might fail for lack of proof of many things; e. g., that it was brought by three bona fide creditors. But it would have withstood a demurrer, and an unopposed adjudication based thereon would have been perfectly valid. But where the defect will appear only through failure of proof—e. g., in respect of evidence of indebtedness—any qualified creditor or creditors may come in, pick up, and carry forward the petition, which its original proponents are not able or willing to do. If it were otherwise, it would often be an easy matter, when four months had elapsed after the act of bankruptcy, to induce or persuade one of the petitioning creditors to default upon his claim and thus avoid adjudication.'

"It seems a fair conclusion to draw from this case, first, that although, under section 59f, a creditor may intervene at any time, his mere intervention need not be held to be effective as amending or perfecting an original petition; second, that, if a petition *valid on its face is pending,* any amendment thereof, whether by adding a necessary creditor, or by adding a new act of bankruptcy at any time, is entirely within the jurisdiction of the court and a matter of judicial discretion. Considering a few of the authorities that are cited in support of the general rule:

5 F.(2d)—55

"In Hark v. Allen, supra, after a new trial had been granted to the defendant, the petitioners asked for leave to amend. The original petition had alleged as the act of bankruptcy the removal and concealment of property. The petition to amend asked leave to add several new acts of bankruptcy occurring ten months prior thereto, viz. some transfers of money, and also transfers of property to different persons, with intent to prefer them. The evidence in the first trial furnished petitioners the information for the allegations of the new acts of bankruptcy in the amended petition. Judge Gray says: 'A liberal policy in regard to the allowance of amendments to pleadings, both at common law and in equity, is to be encouraged, where the amendments proposed tend to prevent a failure of justice through technicalities, and where their allowance does not affect injuriously any just right of the opposite party. Statute law has recognized the wisdom of this policy, both in this country and in England, by enlarging the discretion of the courts in that regard, and the trend of judicial opinion has stamped it as an enlightened policy, tending to promote the ends of justice. * * * That all the goods were removed from defendants' place of business, as alleged in the petition, was not denied; but it was denied that they were removed or concealed with the particular intent charged in the petition. It was, however, admitted that they were removed and disposed of to certain preferred creditors, with the intent to prefer them over the other creditors. The substantive physical act of removal of the goods from the place of business, under circumstances that did not advertise to the creditors and public what disposition had been made of them, was the same as alleged in both the original and amended petitions. It was not in the power of petitioning creditors to ascertain just how the goods removed were disposed of, or with what particular intent the suspicious removal was made. No laches or want of diligence can be imputed to them, in not being able to truly characterize the admitted act of bankruptcy until the information was acquired by the testimony of the defendants themselves at the trial. No injustice is done the defendants by allowing the creditors *to truly characterize the acts alleged by them in their original petition.* The act of bankruptcy alleged in the amendment was not a new act of bankruptcy, but was the same act of the defendants as set forth in the original petition, differently characterized.' This case is referred to by the Circuit Court of Appeals in the Interna-

tional Silver Case as authority for its holding. The two cases theretofore decided by the Second circuit *were not referred to.*

"In Brown Commercial Car Co., supra, the original petition stated the act of preference to be a payment of $10,000 on September 15, 1913, to a bank. The third amended petition set up the original act and three new ones. One of the latter alleged payments of various amounts to different creditors, not to the bank, all of them more than four months prior to the application to amend. Adjudication was on the amended petition, and the issue we have in the instant case was raised. The Circuit Court of Appeals states the general rule as to setting up new and independent acts by amendment after four months, and then holds that the allegations in the amendment of payments of various sums as preferences to various creditors are mere *explanations of and pertaining to* the transfer to the bank alleged in the original petition, *because they were paid through the bank.*

"In re Nusbaum, supra, the original petition set out a preference by legal proceedings under section 3a (3) of the act. The court permitted amendment charging transfer with intent to hinder and delay (act of bankruptcy, provided in section 3a [1] of the act) and transfer with intent to prefer (act of bankruptcy, provided in section 3a [2]), more than four months had elapsed, and moreover the act in the original petition was defectively alleged. The court brought the case within the *general rule* stating that the facts (i. e., the legal proceedings set out in the original petition) *also* constituted act of bankruptcy under clauses 1 and 2 of section 3. This case by the District Court of New York was decided after the Haff Case.

"In Ned Irish, supra, the original petition alleged preference through legal proceedings; the petition was concededly deficient. The court granted a request to amend by charging the same facts as being a transfer to hinder and delay under section 3a (1), and also as being a preference to creditors under section 3a (2). The court says the amendment must be kept within the general scope of the facts set forth. (The report does not show that more than four months had elapsed.)

"Other cases cited by both parties herein seem not exactly in point, or rather it does not clearly appear either what the acts of bankruptcy set out in the petition and in the amendments are, or the report fails to give the dates of the act of bankruptcy and of the original and amended petitions. All of these facts must appear, in order that a pertinent conclusion may be drawn as to just what the holding in the particular case is. They nearly all state the general rule; some inclining to a more liberal statement than others. For example:

"In re Shoesmith (7 C. C. A. 1905) 13 Am. Bankr. R. 645, 135 F. 684, 68 C. C. A. 322, cited by the Circuit Court of Appeals in the International Silver Case: From the report it is evident that an amended petition was permitted more than four months after the act therein described. The court says: 'Another question suggested at the argument has relation to the jurisdiction of the court below. It is contended that, because the first petition filed by the creditor was defective, and a sufficient amended petition was filed more than four months after the last fraudulent transfer of the property, the court had no power to permit an amendment, and was therefore without jurisdiction to entertain the proceedings. The District Court had jurisdiction of the parties. It had jurisdiction of the subject-matter. It has general and exclusive jurisdiction of bankruptcy proceedings. The objection goes to the want of equity exhibited by the petition, not to the want of power in the court. There was jurisdiction to determine the sufficiency of the petition, and it was complete to permit any amendment. The jurisdiction in such cases comes from the statute, and is not conferred by the accuracy and precision of the averments made in the petition. Smith v. McKay, 161 U. S. 355, 358, 16 S. Ct. 490, 40 L. Ed. 731; Blythe v. Hinckley, 173 U. S. 501, 19 S. Ct. 497, 43 L. Ed. 783. And the amendment, when filed, relates to and takes effect as of the date of the filing of the original petition. Bank v. Sherman, 101 U. S. 403, 25 L. Ed. 866.'

"In re Pure Milk Co. (D. C. Ala. 1907) 18 Am. Bankr. R. 735, 154 F. 682, was a case where the court held an amendment (not stated in the report, but apparently a specific allegation of preferential payments) improper, although the original petition alleged the transfer with intent to prefer in general terms. This is contra to International Silver Co. v. N. Y. Jewelry Co., supra. The court held the original petition insufficient, that the amendment after four months would not be allowed for this reason and the further reason that the application did not comply with rule II.

"In Pittsburgh Laundry Co. v. Imperial (3 C. C. A. 1907) 18 Am. Bankr. R. 756, 154 F. 662, 83 C. C. A. 486, the Circuit Court of Appeals sustained a denial of an amend-

ment because the amendments did not state a valid act of bankruptcy.

"I shall not consider further the cases cited by counsel. They amply sustain the right and duty of the court in the instant case to grant the relief asked. In the instant case, the act of bankruptcy now proposed to be added is a mere change in describing the act or occurrence which is described in the original petition. In the original petition, the appointment of a receiver in the state court is alleged to be that, being insolvent, a receiver was appointed because of insolvency, while in the amendment it is alleged that, being insolvent, appointment was upon application of the alleged bankrupt. The same occurrence, the same set of facts, the application and appointment of a receiver in the case of Hopple v. Discount Co., is the real act of bankruptcy in both instances. To use the language of the cases, the one 'has relation to the other'; the act of bankruptcy in the amendment 'has relation to' the act set out in the original petition; it is founded upon or grows out of facts stated or referred to in the original petition; it is 'within the general scope of the facts set forth' in the original petition; it is not an *entirely new* and *independent* act of bankruptcy.

"It is true that, under an allegation charging that being insolvent a receiver was put in charge because of insolvency, a defendant could not be required to meet proof of an act of bankruptcy described; that, being insolvent, the defendant applied for a receiver. These are two different, although similar, acts of bankruptcy in the sense of causes of action; but the same *facts* or *acts* may give rise to different causes of action, or may constitute differently defined acts of bankruptcy as set out in the Bankruptcy Act. These acts of bankruptcy (those here considered), different in this statutory sense, are merely different descriptions of the same operative facts. The same situation obtained in those cases hereinbefore referred to, where the facts were described as the act of bankruptcy defined in section 3a (3)—preference by legal proceedings, and the court permitted amendment to describe them as acts of bankruptcy defined in section 3a (1) and 3a (2); transfers with intent to defraud and transfer with intent to prefer.

"I find, therefore, that the equities in this matter are clearly with the intervening petitioners; that they have not been guilty of laches, but have acted with all reasonable promptness and diligence under the circumstances disclosed; that therefore the petition to amend should be granted as prayed for:

(1) In the interest of justice under the broad general powers of the court to amend a valid pending petition, regardless of the time of filing or the fact that additional acts of bankruptcy may be set up. (2) Because the proposed amendments are mere changes in the description of the same transactions alleged in different form in the original petition and are not *entirely new* and *independent*.

"Accordingly, I recommend that the petition for leave to amend be granted in the manner requested, and that the motion of the Discount Company to dismiss said petition be denied."

Dustin, McKeehan, Merrick, Arter & Stewart, of Cleveland, Ohio, for Cleveland Discount Co.

A. V. Cannon, of Cleveland, Ohio, for opposing creditors.

Marc J. Grossman and H. H. Rose, both of Cleveland, Ohio, for petitioning creditors.

David A. Christopher, of Cleveland, Ohio, for Union Discount Co.

WESTENHAVER, District Judge. After issue joined by original petition and answer, a reference was made by consent to a master to hear the issue and make findings of fact and conclusions of law. The cause is now before me on two reports of the special master and exceptions thereto, one filed August 6, 1923, and the other October 9, 1923.

The first report involves only a ruling upon the admissibility of evidence, the correctness of which was by counsel certified to me for review. After reference, and while the hearing was pending, the three original petitioning creditors withdrew. Other petitioning creditors were permitted to intervene and adopt the original petition. These interveners, more than four months after the original petition was filed, sought leave to amend by setting up certain alleged acts of bankruptcy, said to be wholly new and independent and not within the purview of the original petition. Inasmuch as this cause was then pending before the special master, and had in part been heard by him, the propriety of allowing the requested amendments was likewise referred to him, with instructions to inquire fully and report whether it was proper to permit such amendments to be made. The second report is in response thereto, and inasmuch as the master's action is advisory only, this court, on the hearing of the exceptions thereto, has permitted to be filed and considered additional evidence in affidavit form.

Upon mature consideration, I am of opinion that an amendment should be allowed,

setting up that the Cleveland Discount Company committed acts of bankruptcy, in that, being insolvent, it applied for a receiver for its property in the court of common pleas of Cuyahoga county, Ohio, on or about the 23d day of February, 1923, and that, because of insolvency, a receiver has been put in charge of its property by said state court. This last branch of the alleged act of bankruptcy is in the original petition. The amendment goes only to the first alleged act.

[1] Upon examination of the original petition and answer, and various applications of defendant for extensions of time to answer, I am of opinion that the proposed amendment is not in substance the introduction after four months of an entirely new and independent act of bankruptcy, but is merely an amplification of the act originally alleged. Assuming, as I do, that all parties were at all times acting in good faith, the issue as thus amended is the issue which the parties were intending to make up and try. It was the issue which the court understood, and was warranted in understanding, the parties intended to make up and try when applications for extensions of time to answer were applied for and time given. The parties by their acts and conduct having thus framed and characterized the issue, it is not permissible, after four months' time has thus been obtained, to place another and different interpretation thereon. If defendant's position, that no evidence is admissible in support of the issue as framed by original petition and answer, except the pleadings and decree in the state receivership case, is now tenable, then it was futile to apply for and obtain extensions of time to answer, on the ground that it could not be determined, until an audit was completed, whether or not the alleged bankrupt was insolvent. It was more than futile; it was wholly misleading to the petitioners and to the court.

If the defendant is now right in its several contentions, this inquiry was immaterial, and an answer could and should have been filed, without asking for extensions of time to answer. In the present situation, and in view of these considerations, it is inequitable, after four months, to allow a change of attitude. To permit now the amendment will only require the parties to try an issue that the court and apparently both parties then thought was to be made up and tried. Compare Boehmke v. Traction Co., 88 Ohio St. 156, 163, 164, 102 N. E. 700. Conceding the rule that an entirely new and independent act of bankruptcy may not be set up after a lapse of four months, I

deem it, under the stated circumstances, within the power of this court, sitting as a court of equity, to allow an amendment which will clear up on the record all technical insufficiencies, if any, in these issues as framed by the original petition and answer.

[2] The application to amend, by alleging preferential transfers more than four months old, will be denied. In my opinion, the correct rule is that wholly new and independent acts of bankruptcy cannot, by way of amendment, be set up more than four months after they were committed. Moreover, the alleged preferential transfers were, on the hearing before me, shown to be without substantial merit; indeed, the alleged preferences were reduced to a payment of $107.75 to the Ohio Desk Company, made on or about December 6, 1922. The equities appear to be strongly against the introduction thereof into the case at this time.

[3] The exceptions to the special master's report filed October 9, 1923, will therefore be overruled to the extent necessary to permit the amendment above noted, and sustained in all other respects. This conclusion renders unnecessary a consideration of the legal correctness of the special master's ruling certified in his first report. His ruling is approved. He is instructed to proceed with the reference upon the issues as framed after the above amendment is made, and by such further answer, if any, as the alleged bankrupt, in view thereof, may see fit to make to its answer.

All other equitable considerations, by way of estoppel or otherwise, urged by defendant in opposition to the intervening petitioners' right to have the defendant adjudged a bankrupt, do not properly arise upon this hearing. Undoubtedly creditors may waive acts of bankruptcy, or may by their conduct estop themselves from invoking the jurisdiction of a court of bankruptcy. Whether the intervening creditors are or may be estopped by laches or otherwise, whether or not the number of creditors not waiving the alleged acts of bankruptcy are so few in number, or their claims so insignificant in amount, as to justify the bankruptcy court, in the exercise of its equitable powers, to refuse to take jurisdiction, are all matters which cannot now be considered or determined; but, if defendants resist adjudication upon these or other equitable considerations, it will be necessary first to make full inquiry and find the facts. It is sufficient to say that on this hearing the court cannot anticipate the result of such an inquiry.

Orders will be entered in conformity herewith. Proper exceptions will be allowed. The special master is instructed to proceed with all convenient dispatch to execute the order of reference. Too great delay has already ensued, and should have been avoided. Delay may grievously complicate the situation.